**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

BOBBY JOEL HOLLEYMAN,    )
                                        )
        Plaintiff,    )
                                        )
v.                                      )    Case No. CIV-17-469-RAW-KEW
                                        )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,    )
                                        )
        Defendant.    )

**REPORT AND RECOMMENDATION**

Plaintiff Bobby Joel Holleyman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 60 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a general laborer fixing bridges and roads, oil field worker, and truck driver. Claimant alleges an inability to work beginning December 12, 2013 due to limitations resulting from mild strokes causing limitations, breathing problems, numbness on the right side, and high blood pressure.

## Procedural History

On September 19, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. §1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 12, 2016, Administrative Law Judge ("ALJ") Kenton Felton conducted an administrative hearing by video with Claimant appearing in Ardmore, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma. On February 12, 2016, the ALJ issued an unfavorable decision. On October 18, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to consider

the impact of Claimant's fatigue and other symptoms associated with his microvascular ischemic disease.

### Consideration of Claimant's Conditions

In his decision, the ALJ determined Claimant suffered from the severe impairment of a neurocognitive disorder. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform a full range of work at all exertional levels. He also found Claimant experienced the non-exertional limitations of performing simple and detailed tasks and instructions and he required low stress work environments. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of janitor, groundskeeper, and floor waxer, all of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 23). As a result, the ALJ found Claimant was not under a disability from December 12, 2013 through the date of the decision. Id.

Claimant contends the ALJ failed to properly consider the effects of his microvascular ischemic disease upon his functional abilities. Claimant began suffering from elevated blood pressure in 2013. When he sought treatment, his blood pressure was noted as 210/105 and he was prescribed medication. (Tr. 325-36). On June 10, 2014, Claimant reported not feeling well with tightness in his

chest and shortness of breath. His medications were changed. (Tr. 321-22).

Claimant suffered from similar symptoms on September 15, 2014 and sought medical treatment. He also complained of fatigue, which he stated had gotten worse in the last few months. (Tr. 316). He was tested for cardiac problems after an abnormal EKG but the calcium testing showed Claimant at a low risk of heart disease. (Tr. 317-18, 431-32).

A CT head scan revealed a white matter abnormality. Claimant was diagnosed preliminarily with microvascular disease and an MRI was recommended. (Tr. 335, 426). On November 10, 2014, Claimant underwent an MRI of the brain. The testing revealed multiple periventricular and subcortical white matter hyperintensities in both cerebral hemispheres which was compatible with chronic microvascular ischemic changes. (Tr. 333).

On January 5, 2015, Claimant stated that he was unable to do any activity without feeling like he was going to pass out. (Tr. 347). He reported dizziness, fatigue, and confusion with episodes lasting about 20 minutes with one or two occasions lasting longer than 30 minutes. (Tr. 349). On February 9, 2015, Claimant reported two or three light episodes of fuzziness or dizziness that stopped when he ended the activity in which he was engaged. (Tr. 351).

On February 7, 2015, Claimant underwent a consultative

6

examination by Dr. Michael Gomez. He presented with a history of stroke. He told Dr. Gomez that he experienced memory loss, concentration problems, dizziness, frequent chest pains, and a noticeable decrease in his ability to perform simple tasks. Dr. Gomez found Claimant's symptoms were consistent with a diagnosis of a cognitive disorder, NOS. Dr. Gomez recommended comprehensive psychodiagnostic testing and the acquisition of complete background records. (Tr. 340-42).

On November 19, 2015, Claimant reported episodes of numbness to the right side of his face, dizziness, confusion, and fatigue when he becomes active. The symptoms may last minutes to hours. The report noted a carotid angiogram showed no significant blockages to the carotid arteries. (Tr. 377).

The ALJ accurately and fully set forth the medical testing and diagnoses as well as Claimant's complaints of fatigue and dizziness. (Tr. 14-22). The foundation of Claimant's assertions of error lie in a challenge to the medical findings and the lack of evidence from medical sources associating the symptoms he experienced with a diagnosis of microvascular ischemic disease. Claimant expends considerable effort to convince this Court that his fatigue and other symptoms were improperly associated with other conditions such as coronary artery disease or TIAs when they should have been attributed to microvascular ischemic disease. Claimant may well be

correct but this Court is limited to the medical evidence before it on review. That evidence does not support a finding of the level of restriction which Claimant urges. No examining or consultative professional has diagnosed Claimant with a condition and then found that condition to cause the alleged fatigue and other problems to which Claimant testified which, in turn, causes the restriction in the RFC which Claimant encourages this Court to adopt.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between

an RFC finding and a specific medical opinion on the functional capacity in question." <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ properly evaluated the medical evidence and reached an RFC which is supported by substantial evidence based upon the record available to him.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE